UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Rubygold Main Holdings, LLC

                    v.                                    Civil No. 20-cv-1006-JL
                                                          Opinion No. 2021 DNH 017
Brian Gardner Carpentry, LLC

**MEMORANDUM ORDER**

This motion for preliminary injunction presents an unusual intersection of the power of Federal Courts to enjoin state court proceedings – and related principles of equity, comity, and federalism – bankruptcy law and procedure, and priority of lien rights under New Hampshire law.  Plaintiff Rubygold Main Holdings, LLC seeks to enjoin the defendant, Brian Gardner Carpentry, LLC from levying, through Sheriff's sale of Rubygold's real property, a writ of execution Gardner obtained in New Hampshire Superior Court.  Gardner obtained the writ in a state court action against a prior owner (the Schiltkamps) of Rubygold's property to perfect a mechanic's lien.

Rubygold now argues that the writ is void because before the judgment in the state court action could become final, the Schiltkamps filed for bankruptcy and the automatic bankruptcy stay prevented any further efforts by Gardner to collect its judgment, absent leave from the stay. It further argues that Gardner's mechanic's lien does not encumber the property because the mortgage by which Rubygold's predecessor took title to the property holds priority over the mechanic's lien, and the method of transferring title (foreclosure sale) passes title free and clear of any junior interests and encumbrances.  Rubygold bases its injunction request on two separate declaratory judgment claims:  one declaring the writ void and the other quieting title to its property.  Gardner opposes Rubygold's preliminary injunction request, mainly on the grounds that Rubygold is unlikely to succeed on the merits of either of its declaratory judgment claims,

and that the requested injunction would violate the Federal Anti-Injunction Act, 28 U.S.C. § 2283.

This court has jurisdiction under 28 U.S.C. § 1332(a) (diversity) because Rubygold is a New York limited liability company and its sole member resides in New York, while Gardner is a New Hampshire limited liability company and its sole member resides in New Hampshire, and, the amount in controversy exceeds $75,000. After careful review of the parties' submissions, including two rounds of supplemental briefing, and hearing oral argument, the court denies Rubygold's motion. The court's ruling is a narrow one: because Rubygold seeks an injunction that would effectuate a stay of an ongoing state court proceeding, the Anti-Injunction Act prohibits this court from granting the relief. Moreover, the exception allowing "strangers" to a state court case to pursue injunctive relief in federal court does not apply because Rubygold is in privity with a party to the state court action here by virtue of its relationship as successor in interest to the party's property, and none of the Act's other exceptions apply. The court accordingly does not reach the question of Rubygold's likelihood of success on the merits of its claims or the other preliminary injunction factors.

## I. **Background**

The court draws the following background from the parties' joint statement of undisputed facts[1] and stipulated timeline[2] and, where specifically indicated, evidence submitted before or during the preliminary injunction hearing.

---

[1] Doc. no. 27.

[2] Doc. no. 29.

2

**A.  The parties and the property**

Rubygold is a New York limited liability company with an official address for service of process in Melville, New York.[3]  Rubygold's sole member is Alexander Rubinstein, who resides in New York State.[4]  Rubinstein is also the sole member of Gates Road, NH Centaur Holding, LLC ("Centaur"), a New York limited liability company with the same official address for service of process as Rubygold.[5]  Rubygold owns property known as 5 Gates Road in Etna, New Hampshire (the "Property").[6]

Gardner is a New Hampshire limited liability company whose sole member is Brian Gardner, who resides in New Hampshire.[7]

**B.  Loan and improvements**

In 2010, the Property was owned by Arrien (a/k/a Adriaan) and Robin Schiltkamp.  That year, the Schiltkamps hired Gardner to renovate a house on the Property and entered into a "Construction Proposal and Contract" for the construction project.[8]  Two and a half years into the project, the Schiltkamps financed a portion of the construction with a $2 million loan from

---

[3] Joint Statement of Facts (doc. no. 27), at ¶ 1.

[4] Id. at ¶ 2.

[5] Id. at ¶ 3.

[6] Id. at ¶ 4.

[7] Id. at ¶¶ 5-7.

[8] Id. at ¶ 8.

Mascoma Savings Bank.[9]  To secure the loan, the Schiltkamps granted Mascoma a mortgage on

the Property and recorded the mortgage at the Grafton County Registry of Deeds on November

7, 2012.[10]

Mascoma disbursed money to Gardner as payment for invoices for its construction work

on the project, and received mortgagor affidavits, as reflected in the following chart:[11]

| Gardner Invoice # | Invoice Date | Lien Waiver | Mortgagor Affidavit | Mascoma Payment | Check Date |
|---|---|---|---|---|---|
| 5/2148 | 2/6/2013 | No | 2/6/2013 | $301,634.53 | 2/8/2013 |
| 5/2158 | 3/28/2013 | No | 3/29/2013 | $459,060.27 | 4/1/2013 |
| 5/2167 | 5/17/2013 | No | 5/18/2013 | $405,173.46 | 5/20/2013 |
| 540782-06 | 7/15/2013 | No | 7/18/2013 | $300,000.00 | 7/19/2013 |
| Total: | | | | $1,465,868.26 | |

Accordingly, out of the $2,000,000 loan, Mascoma disbursed $1,465,868.26 to Gardner for its

construction work on the Property.[12]

After July 2013, the Schiltkamps entered into other agreements with Gardner for

additional construction work on the Property, on the same time and material terms as agreed to in

the April 2010 contract.[13]  Using funding sources other than the Mascoma loan, the Schiltkamps

---

[9] Id. at ¶ 9.

[10] Id. at ¶ 10; Ex. A.  All exhibits cited herein refer to the joint set of exhibits the parties submitted prior to the preliminary injunction hearing in Docket Number 38.

[11] Doc. no. 27, at ¶¶ 11-12; Exs. B & O.

[12] Doc. no. 27, at ¶ 13.

[13] Id. at ¶ 14.

paid all invoices from Gardner for work performed between late-July 2013 and April 2014, and as of April 5, 2014 the Schiltkamps had a $17,211.91 credit with Gardner for the project.[14]

Gardner performed additional work on the Property between April 2014 and June 2015 and invoiced the Schiltkamps for this work as follows:[15]

| 04/30/14 | Inv #05/2234, $219,693.48 |
| 05/31/14 | Inv #05/2246, $114,189.40 |
| 12/29/14 | Inv #05/2328, $111,081.68 |
| 06/09/15 | Inv #05/2329, $27,724.20 |
| Total: | $472,688.76 |

The Schiltkamps partially paid these four invoices and applied their $17,211.91 credit, leaving a balance due of $245,476.85.  Gardner secured and recorded a mechanic's lien in the usual manner[16] for this unpaid work.[17]

---

[14] Id. at ¶ 15.

[15] Id. at ¶¶ 16-17.

[16] In New Hampshire, a contractor obtains a mechanic's lien as a matter of law by virtue of its furnishing of at least $15 of labor or materials towards construction work on a property.  See RSA 447:2; Audette v. Cummings, 165 N.H. 763, 770 (2013) ("[I]t is the provision of labor or materials that creates a mechanic's lien . . . as soon as any work or materials are furnished under the contract, increasing in amount according to the progress of the work until performance is completed.") (quoting Daniel v. Hawkeye Funding Ltd. P'ship, 150 N.H. 581, 583 (2004)).  The lien is secured by obtaining a writ of attachment and recording the writ at the registry of deeds in the county where the property is located.  Audette, 165 N.H. at 770-71; see also 4 WIEBUSCH, NEW HAMPSHIRE CIVIL PRACTICE AND PROCEDURE, § 17.05 (2020) ("Attachments of a defendant's interests in real and personal property may be obtained to secure a mechanic's or materialman's lien").

[17] Id. at ¶ 18.

### C.  Mechanic's lien

In June of 2015, Gardner sued the Schiltkamps in Grafton County Superior Court to collect the unpaid balance due for the construction project and perfect its mechanic's lien.[18] Gardner obtained a writ of attachment to perfect its mechanic's lien in the amount of $245,476.85 and recorded the writ on or about July 9, 2015 at the Grafton County Registry of Deeds.[19]  On October 19, 2016, Grafton County Superior Court Judge MacLeod entered a default judgment for Gardner in the amount of $382,848.54 plus costs and interest.[20]  His order noted that a "taxation of costs will be issued by the clerk once this order becomes final."[21]

### D.  Schiltkamp bankruptcy, and lender's relief from stay

On October 31, 2016, less than 30 days after the state court's default judgment order, the Schiltkamps filed a Chapter 11 Petition in the United States Bankruptcy Court for the Southern District of New York, which later converted to a Chapter 7 liquidation proceeding.[22]  Gardner filed a proof of claim in the Schiltkamps' bankruptcy.[23]  Mascoma also filed a proof of claim, resulting from the Schiltkamps' default under the note and mortgage held by Mascoma.[24]

---

[18] Id. at ¶ 19; Ex. D.

[19] Doc. no. 27, at ¶ 20; Ex. E.

[20] Doc. no. 27, at ¶ 22.  It is unclear from the parties' submissions how the amount of Gardner's claim increased from $245,476.85 to $382,848.54 during the state court litigation.

[21] Ex. F.

[22] Doc. no. 27, at ¶¶ 23-24; Ex. G.

[23] Doc. no. 27, at ¶ 29.

[24] Id. at ¶ 25.

Mascoma moved for relief from the automatic stay in order to pursue a foreclosure sale of the Property, to which Gardner objected.[25]  In August 2017, the Bankruptcy Court endorsed a stipulated order terminating the automatic stay as to Mascoma.[26]  The order provided in part that the "automatic stay of Bankruptcy Code § 362(a) shall be terminated as against Mascoma with respect to the Etna Property to permit Mascoma, its successors and assigns, to foreclose the Mortgage or otherwise avail itself of its available state law rights and remedies with respect to the Mortgage and Etna Property."[27]

The Schiltkamp bankruptcy proceeding is still pending.[28]  Gardner has not moved the Bankruptcy Court to terminate, modify, or annul the automatic stay.[29]

---

[25] Id. at ¶ 30.

[26] Ex. H.

[27] Id.  On October 4, 2017, Gardner recorded a letter with the Grafton County Registry of Deeds stating, in part:

> So that prospective purchasers are not misled, we urge you to make clear to all bidders that the successful bidder will take the property subject to BGC's secured mechanics lien and attachment of $245,476.85. We will also be recording a copy of this letter in the Grafton County Registry of Deeds.

Complaint (doc. no. 1) at ¶ 69.  This letter contained the same language as a similar letter that Gardner recorded in November 2015.

[28] Doc. no. 27, at ¶ 27; Ex. G.

[29] Doc. no. 27, at ¶ 31.

### E.  Foreclosure sale and subsequent transfers

After obtaining relief from the automatic stay, Mascoma conveyed the Property by "Foreclosure Deed Under Power of Sale" to Centaur on November 21, 2017.[30]  Centaur paid $300,000 for the Property, and the sale was subject to "all existing liens taking precedence over the mortgage referred to herein."[31]  As a result of Centaur's failure to pay property taxes, the Town of Hanover acquired title to the Property through a Tax Collector's Deed.[32]  Centaur, however, retained redemption rights in the Property under N.H. RSA 80:89.[33]  On December 17, 2018, Centaur assigned its redemption rights in the Property to Rubygold.[34]  The Town of Hanover later conveyed the Property to Rubygold via a "Deed with No Covenants," and "subject to any liens of record against the property as of the time of the tax deed to the Town of Hanover . . . ."[35]

### F.  Writ of execution

Notwithstanding the fact that the Schiltkamps' bankruptcy proceeding was still pending, and Gardner had not sought relief from the stay, Gardner moved to re-open the state court case and moved for entry of a Writ of Execution in that case in March 2019.[36]  By order dated April 2,

---

[30] Id. at ¶ 33; Ex. I.

[31] Ex. I at 86.

[32] Doc. no. 27, at ¶ 36; Ex. L.

[33] Doc. no. 27, at ¶ 37.

[34] Id. at ¶ 38.

[35] Id. at ¶ 39; Ex. M.

[36] Doc. no. 27, at ¶ 41; Exs. W & X.

2019, Superior Court Judge Bornstein re-opened the case and ordered Gardner to "furnish a copy of the [motion for a writ of execution] to [Rubygold] and certify it has done so."[37]  Gardner sent the motion and Superior Court's order to Rubygold by certified mail, return receipt requested to its address of record.[38]  On April 25, 2019, a representative of Rubygold signed for the certified mail package.[39]  Gardner's counsel then certified to the state court that it had furnished a copy of the motion for writ of execution to Rubygold.  Rubygold did not appear in the state court case at that time, and Rubenstein – Rubygold's sole member – claims that he has "no recollection" of receiving a copy of the package.[40]

By order dated March 9, 2020, Superior Court Judge MacLeod directed Gardner to submit a "proposed order for the court's consideration."[41]  A day later, Gardner submitted a proposed order on its motion for writ of execution, a proposed Writ of Execution, and a sample Writ of Execution that Gardner's counsel had allegedly used in a different matter.[42]  The proposed Writ of Execution did not identify the Property as owned by the Schiltkamps or Rubygold, but instead ordered the Sheriff to "levy the lands known as 5 Gates Road, Hanover, NH," without identifying the property owner or referencing the fact that the Schiltkamps were

---

[37] Ex. Y.

[38] Ex. Z.

[39] Id.

[40] Ex. C, at ¶ 8.

[41] Doc. no. 27, at ¶ 45

[42] Ex. DD.

the judgment debtors in the state court case.[43]  The Superior Court endorsed Gardner's proposed

order granting its motion for writ of execution on July 7, 2020,[44] and issued a Writ of Execution

on August 18, 2020.[45]  The Writ did not track the proposed writ submitted by Gardner, but

instead ordered the Sheriff to "levy the lands, personal estate, property interest, right or credit of

Arrien L.C. Schiltkamp; Robin Schiltkamp to the extent allowed by the Court in its order of July

7, 2020, and pay to Brian Gardner Carpentry, LLC the amount stated below with interest."[46]

On August 23, 2020, Gardner's counsel sent a letter to Rubygold enclosing the July 7,

2020 State Court Order.[47]  In the letter, counsel stated that he intended to submit the Writ of

Execution to the Sheriff to institute a Sheriff's sale of the Property, unless Rubygold committed

to paying Gardner the sum of $443,811.68.[48]  Several days later, counsel for Rubygold

acknowledged receipt of Gardner's August 23 letter, rejected Gardner's demand for payment,

and argued that Gardner's plans to institute a Sheriff's sale were improper for several reasons.[49]

Rubygold did not appear in the state court case at that time.  Gardner's counsel did not send the

court-issued Writ to the Sheriff to initiate a Sheriff's sale of the Property, but solicited the

Sheriff's Office's input on how to appropriately change the description of the Property in the

---

[43] Id.

[44] Ex. J.

[45] Ex. Q.

[46] Id.

[47] Ex. J.

[48] Id.

[49] Ex. N.

Writ in order for it to be effective.[50]  Gardner's counsel intends to return to the Grafton County Superior Court to request an amended, corrected, Writ of Execution.[51]

### G.  Procedural history

Rubygold filed its complaint in this action on October 2, 2020.[52]  It also moved for a preliminary injunction.[53]  On October 8, the court held a status conference over its videoconferencing platform to discuss the contours of a hearing on Rubygold's preliminary injunction motion.  The parties agreed that the motion did not necessitate an in-person hearing, considering the court's standing orders imposing limits on the availability of in-person hearings during the COVID-19 pandemic.[54]  As part of its regular practice for deciding preliminary injunction motions, the court ordered the parties to submit a joint statement of undisputed facts, individual proposed findings of fact and rulings of law, witness lists, and proposed exhibits in advance of the scheduled hearing.[55]

The court held a pre-hearing conference on November 3 to discuss a number of justiciability issues surrounding the plaintiff's motion, including standing, the Anti-Injunction Act, and jurisdictional and abstention issues.  The parties – at the court's prompting – submitted

---

[50] Doc. no. 27, at ¶ 52.

[51] Ex. BB.

[52] Complaint (doc. no. 1).

[53] Rubygold's Mot. for Prelim. Injunction (doc. no. 4).

[54] See, e.g., Orders 20-7 (March 23, 2020) and 20-25 (July 24, 2020).

[55] Doc. no. 13.

a stipulation with a schedule for supplemental briefing on these issues,[56] and submitted their

supplemental memoranda accordingly.[57]  The court held a hearing on Rubygold's motion by

videoconference on January 8, 2021, where the parties proceeded on offers of proof.

## II.    Analysis

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as

of right."  Munaf v. Geren, 553 U.S. 674, 689–90 (2008) (quotation omitted).  In deciding

whether to grant a preliminary injunction, the court considers the familiar four factors:

> the movant's likelihood of success on the merits; whether and to what extent the
> movant will suffer irreparable harm in the absence of injunctive relief; the balance
> of [relative] hardships, that is, the hardship to the nonmovant if enjoined as
> opposed to the hardship to the movant if no injunction issues; and the effect, if
> any, that an injunction [or the lack of one] may have on the public interest.

CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (quotations and citations omitted).

"[T]he first two factors, likelihood of success and of irreparable harm," are "the most important

in the calculus."  Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (quoting González-Droz v.

González-Colon, 573 F.3d 75, 79 (1st Cir. 2009)) (internal quotation marks omitted).  And of

those, "'likelihood of success is the main bearing wall' of this 'framework.'"  W Holding Co. v.

AIG Ins. Co., 748 F.3d 377, 383 (1st Cir. 2014) (quoting Ross-Simons of Warwick, Inc. v.

Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)).  Rubygold bears the burden of proving all four

preliminary injunction factors.  See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir.

2006).

---

[56] Doc. no. 23.

[57] See Doc. no. 25; Doc. no. 26.

As discussed below, the court finds that due to the nature of the injunctive relief sought here, the Anti-Injunction Act divests this court of any authority to issue Rubygold's requested injunction. The court accordingly need not address the four preliminary injunction factors and denies Rubygold's motion.

### A. Authority for injunction

### 1. Basis for injunctive relief

Rubygold bases its request for a preliminary injunction on Counts 1 and 2 of its six-count complaint. In Count 1, it asks – under the Declaratory Judgment Act, 28 U.S.C. § 2201 – for a declaration "that the automatic stay from the Schiltkamp bankruptcy remains in effect and at all times relevant to this case barred entry of judgment in [the state court action]" and that "no final judgment has entered [in the state court action] and any writ of execution in that matter is ineffective."[58] In Count 2, it asks for a separate declaratory judgment that Gardner's mechanic's lien does not encumber Rubygold's property, quieting title to the Property.

Rubygold moves to preliminarily enjoin Gardner and its counsel from "serving or recording the writ of execution issued in [the state court case] or taking any action to conduct, to permit, to continue, or otherwise act to further a sheriff sale based on said writ."[59] It also seeks a nearly identical permanent injunction.[60]

---

[58] Complaint (doc. no. 1), at ¶¶ 48-49.

[59] Proposed Injunction Order (doc. nos. 4-3 and 30); see also Doc. no. 1, at 11.

[60] See Doc. no. 1, at ¶ 57.

### 2.  Anti-Injunction Act

Rubygold seeks injunctive relief against a party to a state court proceeding that would directly impact – and potentially stay – that proceeding.  Before considering the merits of Rubygold's claims, the court therefore must decide whether the requested relief would violate the Anti-Injunction Act, 28 U.S.C. § 2283.  At the court's request, the parties addressed the Anti-Injunction Act in supplemental briefing.  See Gloucester Marine Rwys. Corp. v. Charles Parisi, Inc., 848 F.2d 12, 15 (1st Cir. 1988) (recognizing that the court may raise the Anti-Injunction Act sua sponte "to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court") (quoting Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623 (1977) (plurality opinion)).  For the following reasons, the court finds that Rubygold's requested injunctive relief would violate the Act.  Because Rubygold seeks relief that this court cannot enter, its motion for preliminary injunction necessarily must be denied.  See Gloucester Marine, 848 F.2d at 15 ("The [Anti-Injunction Act] is not strictly jurisdictional; it merely deprives the federal courts of the power to grant a particular form of relief.").

The Anti-Injunction Act provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  The statute serves as an "absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions." Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers, 398 U.S. 281, 286 (1970).  It is a "necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts" and "represents Congress' considered judgment as to how to

14

balance the tensions inherent in such a system." Smith v. Bayer Corp., 564 U.S. 299, 306 (2011)

(quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988)).  Accordingly, "[a]ny

doubts as to the propriety of a federal injunction against state court proceedings should be

resolved in favor of permitting the state courts to proceed." Smith, 564 U.S. at 306 (quoting Atl.

Coast Line R. Co., 398 U.S. 281, 297 (1970)); see also Chick Kam Choo, 486 U.S. at 151

("[T]he fact that an injunction may issue under the Anti-Injunction Act does not mean that it

must issue.") (emphasis in original).

        To that end, courts have construed the Act broadly, and precluded injunctions against

parties to a state court action (in addition to state courts or judges themselves)[61] and injunctions

to prevent parties from levying on a writ of execution obtained in state court.  See Atl. Coast

Line R. Co., 398 U.S. at 287 ("It is settled that the prohibition of § 2283 cannot be evaded by

addressing the order to the parties or prohibiting utilization of the results of a completed state

proceeding.").[62]  Thus, while Rubygold has not explicitly moved to enjoin enforcement of the

---

[61] See, e.g., County of Imperial v. Munoz, 449 U.S. 54, 58-59 (1980) (invalidating injunction against party to state court case); Gloucester Marine, 848 F.2d at 15 (noting that the word "proceedings" in Act is "comprehensive" and includes injunctions against parties to state court cases); In re MI Windows and Doors, Inc., Prods. Liab. Litig., 860 F.3d 218, 224 (4th Cir. 2017) ("An injunction issued against parties to a state court proceeding is, for purposes of the Act, considered an injunction to stay the state court proceeding itself."); Tropf v. Fidelity Nat. Title Ins. Co., 289 F.3d 929, 941 (6th Cir. 2002), cert. denied, 537 U.S. 1118 ("The Supreme Court has held that this prohibition extends to indirect injunctions against parties.").

[62] See also Hill v. Martin, 296 U.S. 393, 403 (1935) (Act "applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective"); Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co., 328 F.2d 791, 793 (3d Cir. 1964) ("[A]n injunction against execution or any other proceeding to enforce a state judgment is forbidden as well as one against the prosecution of state litigation to obtain a judgment.") (citing Hill, 296 U.S. at 403); Garrett v. Hoffman, 441 F. Supp. 1151, 1156 (E.D. Pa. 1977) (observing that "numerous cases involving injunctive relief clearly establish that § 2283 proscribes restraints on the enforcement or execution of judgments").

state court order granting Gardner's request for a writ of execution, the relief it requests would prohibit the New Hampshire Superior Court from enforcing that order and prevent Gardner from carrying it out, effectively staying the state court case.[63]  The Act therefore bars Rubygold's injunction unless one of the exceptions applies.

By its terms, injunctions (1) "expressly authorized by Act of Congress," (2) "necessary in aid of [the district court's] jurisdiction," or (3) "to protect or effectuate [the district court's] judgments" are exempted from the Anti-Injunction Act's bar.  28 U.S.C. § 2283.  "The three exceptions enumerated in the Act must be narrowly construed" and not "enlarged by loose statutory construction."  Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo, 988 F.2d 252, 261 (1st Cir. 1993) (citing Mitchum v. Foster, 407 U.S. 225, 228-29 (1972)); Atl. Coast Line R. Co., 398 U.S. at 287.

Rubygold argues that the Act does not apply because it seeks an injunction "in aid of bankruptcy law," which, in its view, is an injunction "expressly authorized by Act of Congress." 28 U.S.C. § 2283.  It also argues that it is exempt from the Act because it is a "stranger" to the state court case.[64]  Neither argument has merit.

**The Act of Congress exception.**  Although injunctions authorized by bankruptcy laws, such as 11 U.S.C. § 105, are a recognized exception to the Anti-Injunction Act,[65] this is not a

---

[63] In its proposed injunction order, Rubygold asks for an injunction enjoining Gardner "from serving or recording the writ of execution issued in [the state court case] or taking any action to conduct, to permit, to continue, or otherwise act to further a sheriff sale based on said writ." Doc. nos. 4-3 and 30.

[64] Doc. no. 25, at 18-20.

[65] See, e.g., In re G.S.F. Corp., 938 F.2d 1467, 1477–78 (1st Cir. 1991); Parker v. Goodman (In re Parker), 499 F.3d 616, 627 (6th Cir. 2007); Fussell v. Price (In re Fussell), 928 F.2d 712 (5th Cir.

bankruptcy proceeding and Rubygold is not seeking injunctive relief under § 105, § 362, or any other section of the Bankruptcy Code.[66]  Rubygold instead seeks an injunction under Rule 65 of the Federal Rules of Civil Procedure arising from its claims under the Federal Declaratory Judgment Act.  The Declaratory Judgment Act does not expressly authorize this type of injunction and the "Act of Congress" exception to the Anti-Injunction Act therefore does not apply.  See Goss v. Illinois, 312 F.2d 257, 259 (7th Cir. 1963) (finding that the Declaratory Judgment Act did not satisfy the "act of Congress" exception to the anti-injunction statute).[67]

Recognizing this, Rubygold argues that its injunction request is "in aid of bankruptcy law" and therefore still satisfies the exception to the Anti-Injunction Act for injunctions expressly authorized by the Bankruptcy Code.[68]  But Rubygold provides no support for this argument, and

---

1991), cert. denied, 502 U.S. 1107 (1992); Manville Corp. v. Equitable Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 63 (2d Cir. 1986); In re Davis, 691 F.2d 176, 177–78 (3d Cir. 1982).  The "court" as referenced in 11 U.S.C. § 105(a) is the bankruptcy court.  See Jamo v. Katahdin Fed. Credit Union (In Re Jamo), 283 F.3d 392, 403 (1st Cir. 2002) (noting that 11 U.S.C. § 105 "empowers bankruptcy courts to 'issue any order, process, or judgment that is necessary or appropriate' to effectuate the provisions of the Bankruptcy Code").

[66] See Doc. no. 35-5, at 12-13.

[67] See also Casa Blanca de Punta Mita v. Rayment, No. 19-CV-00188-GKF-JFJ, 2020 WL 4208055, at *7 (N.D. Okla. July 22, 2020) ("The Declaratory Judgment Act does not include an exception to the Anti-Injunction Act.") (citing Goss, 312 F.2d at 259); Benson v. Family Tree Cop., No. 17-3839, 2017 WL 11569192, at *1 (D. Minn. Oct. 2, 2017) ("the statute under which Plaintiff seeks relief, the Declaratory Judgment Act, does not come within the [Anti-Injunction Act's] expressly authorized exception") (quotations omitted); Georgia-Pacific Corp. v. Putnam, 528 F. Supp. 2d 606, 611 (S.D. W.Va. 2007) (quoting Garrett v. Hoffman, 441 F. Supp. 1151, 1158 (E.D. Pa. 1977) ("The Declaratory Judgment Act does not come within the 'expressly authorized' exception")).

[68] Doc. no. 25, at 18.

17

the court's research has revealed none.[69]  District courts may (but seldom do) "sit in bankruptcy"

in certain circumstances.  See AH Robins Co., Inc. v. Piccinin, 788 F. 2d 994 (4th Cir. 1986)

(district court sitting in bankruptcy and presiding over bankruptcy proceedings issued injunction

under §§ 105 and 362 of the Bankruptcy Code).  This litigation, however, is plainly not such a

case.  The court does not sit in bankruptcy here.  By contrast, Rubygold (a non-party to the

Schiltkamp bankruptcy) has brought claims that are tangentially related to an already-pending

bankruptcy proceeding in a different district, while certain other of Rubygold's claims have no

relation to bankruptcy law or procedure whatsoever.  The court therefore disagrees that an

ordinary district court injunction allegedly "in aid of bankruptcy law," under the specific facts

and circumstances present here, satisfies the Act's exception for injunctions "expressly

authorized by Act of Congress."  Rubygold's aid of bankruptcy argument is similarly unavailing

because in Count 2 it seeks a declaratory judgment relating to lien priority, which has nothing to

do with bankruptcy.

     As for the other two statutorily recognized exceptions, this is not an action to protect a

prior judgment of this court and is not necessary to aid this court's jurisdiction, and Rubygold

---

[69] The cases cited above in footnote 65 and in Rubygold's supplemental brief do not support
Rubygold's "in aid of bankruptcy" argument mainly because they are all bankruptcy cases that
originated in bankruptcy court.  Had Rubygold sought a similar injunction (but under the
authority of § 105 or some other section of the Bankruptcy Code) in the pending Schiltkamp
bankruptcy case, it may not be barred by the Anti-Injunction Act.  See In re G.S.F. Corp., 938
F.2d at 1477 ("By its terms, the Anti-Injunction Act does not govern bankruptcy courts"); In re
Parker, 499 F.3d at 627 ("Title 11 U.S.C. § 105 authorizes the bankruptcy court to 'issue any
order, process, or judgment that is necessary or appropriate to carry out the provisions of' the
Bankruptcy Code.").  It did not.  The court therefore does not view the possible availability of a
similar remedy in a different forum as a sufficient basis to exempt this case from the broad reach
of the Anti-Injunction Act.

does not argue otherwise.  Rubygold's claims therefore do not fall under any of the three listed exceptions to the Anti-Injunction Act.

**The strangers exception.**  Rubygold relies on an additional, judicially recognized and rarely used, exception to the Act; namely, that third parties may "enjoin a state proceeding with a federal injunction" if the third party is "a stranger to the state proceedings."  Garcia v. Bauza–Salas, 862 F.2d 905, 909 (1st Cir. 1988); see also Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 32 (1st Cir. 2010) ("[B]ecause the creditors in this case were not parties in the Koresko litigation or in privity with parties, they are considered 'strangers' to that suit and are accordingly unrestricted by the Anti–Injunction Act.") (citing Casa Marie, 988 F.2d at 264).  The First Circuit Court of Appeals has been "reluctant to extend the protection of the 'strangers' exclusion' because it has been utilized so seldom by the Supreme Court that its continued vitality has even been questioned."  Casa Marie, Inc., 988 F.2d at 265 (citing County of Imperial, 449 U.S. at 60–61 (Powell, J., concurring) ("I record my willingness to reconsider Hale.  It has rarely been cited and—as the Court reads it today—it creates an exception to the coverage of the Anti-Injunction Act that I think is contrary to the policy of that Act.")).  Nevertheless, neither the United States Supreme Court nor the First Circuit Court of Appeals have invalidated the "strangers" exception and the court will accordingly determine whether it applies here.

Rubygold argues that it is a stranger to the state court proceeding because it is not a party to that case or in privity with the only defendant in that case, the Schiltkamps.[70]  It is undisputed that Rubygold is not a party to the state court case.  The privity question, however, is a closer

_____

[70] Doc. no. 23, at 21.

call.  Rubygold argues that it is not in privity with the Schiltkamps because it "has no

relationship" with them and because the Schiltkamps did not represent Rubygold or protect its

interests in the state court litigation.[71]  The court is not persuaded.

A party's status as a "stranger" to a state court proceeding "depends on whether they are

bound, under the principles of res judicata or collateral estoppel," by the decisions in the state

court proceeding.  Casa Marie, Inc., 988 F.2d at 265.  Ordinarily, nonparties to an original

judgment are not bound by res judicata or collateral estoppel, however, there are several,

alternative, exceptions to this rule.  See Walker v. Day, 238 A.3d 1096, 1099 (N.H. 2020).  For

example, courts have found privity between a non-party and a party when (1) a non-party

"controls or substantially participates in controlling the presentation,"; (2) a non-party

"authorizes a party in litigation to represent his or her interests,"; or (3) "there is a 'pre-existing

substantive legal relationship[ ]' between the non-party and party, such as that between a

property owner and his successor in interest."  Appeal of Town of Goshen, No. 2014-0656, 2015

WL 11071569, at *3 (N.H. Aug. 19, 2015) (citations omitted) (emphasis added); see also

Baltimore Cty. v. AT & T Corp., 735 F. Supp. 2d 1063, 1078 (S.D. Ind. 2010) ("Another

exception is that 'a nonparty may be bound by a judgment because she was adequately

represented by someone with the same interests who [wa]s a party to the suit.'") (quoting Taylor

v. Sturgell, 553 U.S. 880, 894 (2008)) (emphasis added).

For the "pre-existing substantive legal relationship" exception, "[q]ualifying relationships

include, but are not limited to, preceding and succeeding owners of property, bailee and bailor,

---

[71] Doc. no. 4-1, at 14.

and assignee and assignor." Taylor, 553 U.S. at 894; see also Walker, 238 A.3d 1096 (citing Sleeper v. Hoban Family P'Ship, 157 N.H. 530, 533 (2008)) ("Qualifying relationships include that between a property owner and his successor in interest.")); RESTATEMENT (SECOND) OF JUDGMENTS § 43 (1982) ("A judgment in an action that determines interests in real or personal property: (1) With respect to the property involved in the action: (a) Conclusively determines the claims of the parties to the action regarding their interests; and (b) Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself."). These relationships are "rooted in property law and involve relationships in which the parties' legal interests are aligned such that they are nearly indistinguishable." Walker, 238 A.3d 1096; see also Innie v. W&R, Inc., 116 N.H. 315, 316 (1976) ("As successor in interest, defendant Levitt is in privity with W&R and Nutfield, and took title [after mortgage foreclosure sale] subject to" the default judgment and writ of attachment in prior lawsuit against prior property owner).

At oral argument, counsel for Rubygold argued that the privity rule for successors in interest to property only applies in cases that determine interests in the subject property. But this argument misses the mark because the type of case has not been recognized as a limiting principle of the rule. For example, Innie was a claim by a subsequent property owner to dissolve a mechanic's lien on the property that a contractor obtained against a prior owner. 116 N.H. at 315-16. And Walker, where the Court recognized and cited with approval the successors in interest to property privity rule, was a defamation case. 238 A.3d 1096; see also 18A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4462 (3d ed. 1998) ("There is no requirement that the proceeding be in the form of an in rem or quasi-in-rem action, even as to real property."). Instead, the "important point is that preclusion arises from the needs

21

of property relationships rather than any theory that the grantor somehow litigates as representative of a nonparty who may not yet even be identified." WRIGHT & MILLER, § 4462. To hold otherwise and deny preclusion (or, in this case, find that Rubygold was not in privity with its predecessor in interest to the Property), "would be to deny the victor any assurance of repose and expose every judgment to defeat by simple conveyance." Id. If, however, the "post-judgment transaction does not involve matters that would put prudent people on guard against prior litigation, preclusion may be inappropriate." Id. That is plainly not the case here, where Rubygold had sufficient notice at the time it acquired the Property, through deeds and other documents recorded on the registry, of Gardner's lien and judgment against the Schiltkamps.

Under these principles of nonparty preclusion, for purposes of this analysis, Rubygold has a substantive legal relationship, and is therefore in privity with, the Schiltkamps as a successor in interest to their property. Because of its legal status as a successor in interest to the Schiltkamp's property, Rubygold is in privity with them regardless of whether the Schiltkamps actually represented and protected Rubygold's interests in the state court litigation and notwithstanding the fact that Rubygold is not the immediate successor in interest to the property. See Sleeper, 157 N.H. at 534 (holding that "because the petitioner is the successor in interest to the [prior property owner], he is in privity with them and is bound by the judgment in their prior action [involving the property]," despite the fact that the petitioner's interests were not represented or protected in the prior litigation); O'Donoghue v. Commonwealth, 93 Mass. App. Ct. 156, 158–59 (2018) (holding that subsequent successors in interest were bound by prior judgments involving prior property owners). The court therefore cannot find that Rubygold was a stranger to the state court case and exempted from the reach of the Anti-Injunction Act.

22

Finding Rubygold a stranger to the state court case "would also ignore reality." Trustees of Carpenters' Health & Welfare Tr. Fund of St. Louis v. Darr, 694 F.3d 803, 811 (7th Cir. 2012). As detailed above, in early April 2019, Superior Court Judge Bornstein ordered Gardner to notify Rubygold of the motion for writ of attachment and certify to the court that it provided (or attempted to provide) written notice of the motion.  Gardner sent the motion and Superior Court's April order to Rubygold by certified mail to the address listed on Rubygold's deed for the Etna Property as well as Rubygold's official address on file with the New York Secretary of State.  A representative of Rubygold signed for the certified mail package.  Id.  That was the first[72] opportunity for Rubygold to intervene and become a party in the state court case.

Less than a week after the court granted Gardner's motion for a writ of execution, Gardner notified Rubygold of this order and its intent to pursue a Sheriff's sale.  Yet Rubygold did not intervene in the state court case at that time either and has not intervened since.  Gardner has also represented that it plans to seek a corrected writ of execution that lists only Rubygold's property and not the Schiltkamps as judgment debtors.  If the state court grants that request (presumably over Rubygold's objection), that too would seem to put Rubygold in the shoes of a party to the state case, and subject it to the court's rulings.  Lastly, parties and their privies are normally bound by prior court judgments, and Rubygold claims it would be bound by the order granting Gardner a writ of execution in the state court case, which also counsels against finding Rubygold a stranger to that case.

---

[72] At oral argument, counsel for Gardner represented that he sent an additional letter dated January 30, 2019 to Rubygold notifying Rubygold of Gardner's action to re-open the state court litigation involving the Schiltkamps and Rubygold's property.  See Ex. HH, at 264.

While this may seem like a harsh result, ruling that Rubygold is not a "stranger" to the state court litigation "has less drastic repercussions for [it] than would a formal res judicata determination" because this ruling does not divest Rubygold of its right to litigate its claims, but merely restricts them to the available other fora. Casa Marie, Inc., 988 F.2d at 265; see also Rushing v. Green Tree Servicing, LLC (In re Rushing), 443 B.R. 85, 100 (Bankr. E.D. Tex. 2010) ("Entitlement to remedies" for violation of the "essential protections provided by the automatic stay goes to the heart of the bankruptcy process and should be safeguarded in a centralized forum. A bankruptcy court is the best-equipped forum in which to evaluate the significance and impact of any alleged stay violation."); Merrill v. MBNA America Bank, N.A. (In re Merrill), 343 B.R. 1, 9 n. 10 (Bankr. D. Me. 2006) ("applying and enforcing the stay" is not "simple exercise where a bankruptcy judge's experience and training are not required"). In closer cases, this court must also be mindful of the Supreme Court's admonition that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." Smith, 564 U.S. at 306. Since the Anti-Injunction Act "deprives" this court "of the power to grant" the requested equitable relief, and none of the Act's exceptions apply, the court denies Rubygold's motion for preliminary injunction. Gloucester Marine, 848 F.2d at 15.

3. **Younger abstention and related doctrines**

Because this lawsuit is effectively an appeal of the state court order granting the writ of execution, the court must exercise caution before wading into waters typically occupied by state courts and determine whether any abstention or related doctrines like Rooker-Feldman would bar the injunctive relief Rubygold seeks. The court therefore asked the parties to brief the question

(see doc. no. 23) of whether these doctrines would prevent the injunctive relief Rubygold seeks here, and the parties dutifully complied.

As discussed above in Section II, A, 2, supra, because the Anti-Injunction Act bars the relief, the court need not analyze the applicability of other abstention doctrines.  But even if it did, both the Rooker-Feldman doctrine[73] and Younger abstention[74] would not apply because Rubygold was not a party to the state court action (and Rooker-Feldman does not apply to nonparties in privity with parties to state court cases, see Lance, 546 U.S. at 466) and not "closely related" to a party under an exclusion to Younger abstention that is "far more narrow than the 'strangers' exclusion under the Anti-Injunction Act."  Casa Marie, Inc., 988 F.2d at 267.

**III.  Conclusion**

Rubygold's requested preliminary injunction would violate the Anti-Injunction Act and none of the exceptions to the Act apply.  Accordingly, the court DENIES Rubygold's motion for a preliminary injunction.[75]

---

[73] The Rooker-Feldman doctrine "preserves the [United States] Supreme Court's exclusive jurisdiction over 'appeals from final state-court judgments,' by divesting lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court.  Klimowicz v. Deutsche Bank Nat. Trust Co., 907 F.3d 61, 64 (1st Cir. 2018) (quoting Lance v. Dennis, 546 U.S. 459, 463 (2006)).

[74] The Younger abstention doctrine "requires federal courts, in the absence of extraordinary circumstances, to refrain from interfering with" state "(i) criminal prosecutions, (ii) 'civil proceedings that are akin to criminal prosecutions,' and (iii) proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'"  Sirva Relocation, LLC v. Richie, 794 F.3d 185, 189, 192 (1st Cir. 2015) (quoting Sprint Commc'ns, Inc. v. Jacobs, 134 S.Ct. 584, 588 (2013)).

[75] Doc. no. 4.

**SO ORDERED**.

_____
Joseph N. Laplante
United States District Judge


Dated:  January 22, 2021

cc:      Edmond J. Ford, Esq.
            Marc W. McDonald, Esq.
            W. E. Whittington, Esq.